```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MERVYN SINGH,                                               :
                                                            :
                              Plaintiff,                    :
                                                            :            17-CV-7159 (VSB)
              - against -                                   :
                                                            :            **OPINION & ORDER**
                                                            :
NEW YORK CITY DISTRICT COUNCIL OF                           :
CARPENTERS BENEFIT FUNDS,                                   :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

Appearances:

Mervyn Singh
Brooklyn, NY
*Pro se Plaintiff*

Michele Ann Coyne
Elizabeth O'Leary
William Eric Blashka
Kauff McGuire & Margolis LLP
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

 Plaintiff Mervyn Singh brings this action pro se against the New York City District Council of Carpenters Pension Fund (incorrectly named as the New York City District Council of Carpenters Benefit Funds) (the "Fund"), asserting a claim for unpaid disability pension benefits. Before me is Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Because I find that Plaintiff's claim is barred by the applicable statute of limitations, Defendant's motion to dismiss is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/11/2018

I.  **Background**[1]

Plaintiff asserts that, beginning in March 1986, he "became employed as a carpenter and became associated with [the Fund]." (Am. Compl. 8.)[2] On or about August 5, 1994, Plaintiff was injured on the job when he fell down an elevator shaft and became permanently disabled. (*Id.*) Plaintiff claims that when he became permanently disabled, he was eligible for a disability pension. (*Id.* at 9.)

As described by Defendant, the Fund is a "multiemployer defined benefit pension plan within the meaning of Sections 3(2) and 3(37) of [ERISA]." (Def.'s Mem. 2.)[3] The Fund provides pension benefits to eligible individuals who earn a sufficient amount of "Vesting Credits" by virtue of their work in certain "Covered Employment." (Cordero Decl., Ex. 3 (the "1993 Plan") at 2–3, 6, 8.)[4] If a participant is not "vested" under the Fund—that is, "eligib[le]

---

[1] The following factual background is garnered from the allegations contained in the Amended Complaint, (Doc. 14), documents referenced therein or attached thereto, and New York City District Council of Carpenters Pension Plan (the "Plan") documents, all of which I may properly consider on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Faber v. Metro. Life Ins. Co.*, No. 08-cv-10588, 2009 WL 3415369, at *1 n.1 (S.D.N.Y. Oct. 23, 2009) ("In considering a motion to dismiss, the Court may consider documents attached as an exhibit to the complaint or incorporated into the complaint by reference, [and] documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference . . . . Specifically in the ERISA context, because the Plan is directly referenced in the complaint and is the basis of this action, the Court may consider the Plan in deciding the motion to dismiss." (internal quotation marks omitted)), *aff'd*, 648 F.3d 98 (2d Cir. 2011). I assume Plaintiff's allegations contained in the Amended Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed on December 4, 2017. (Doc. 14.) The pages and paragraphs of Plaintiff's Amended Complaint do not have consecutive or continuous numbers. Accordingly, all references to the Amended Complaint will be to the numerical page numbers given to the Amended Complaint by the court's ECF system.

[3] "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant New York City District Council of Carpenters Pension Fund's Motion to Dismiss Plaintiff's Amended Complaint, filed on February 5, 2018. (Doc. 17.)

[4] "Cordero Decl." refers to the Declaration of Luis Cordero in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint, filed on February 6, 2018. (Doc. 21.) Although Plaintiff attached a portion of the current Summary Plan Description ("SPD"), according to documents attached to the Amended Complaint, the relevant document is the Plan that was in effect at the time Plaintiff ceased Covered Employment—the 1993 Plan. (Am. Compl., Ex. C at 39 ("If you retired or separated from service before October 2011, you should refer to the SPD and Plan in effect at the time of your retirement or separation from service."); Cordero Decl. ¶ 9.)

2

for any . . . Regular, Early Retirement, or Deferred Pension"—failure to timely work in Covered Employment could result in the partial, temporary, or permanent forfeiture of Vesting Credits. (*Id.* at 9.) Under the Fund's rules, if a participant fails to earn at least one quarter of a Vesting Credit in a calendar year, he incurs a "One-Year Break-in-Service." (*Id.* at 57.) If an unvested participant has a sufficient number of consecutive One-Year Breaks-in-Service, he incurs a "Permanent Break-in-Service,"[5] resulting in the permanent forfeiture of any previously-earned Vesting Credits. (*Id.* at 58–59.) One way a Permanent Break-in-Service may occur is when a participant has earned five or fewer Vesting Credits and has five consecutive One-Year Breaks-in-Service. At the time Plaintiff ceased engaging in Covered Employment, the Fund required a participant to have a minimum of eight Vesting Credits in order to receive a disability pension. (*Id.* at 20.)

In or around August 1995, Plaintiff applied for disability pension benefits through the Fund based on work performed between 1986 and 1994. (Am. Compl. 8.) Plaintiff claims he received no response to his submission of the application. (*Id.*) On June 5, 1998, Plaintiff received a letter from the Fund stating that Plaintiff's Vesting Credits, which the Fund claimed totaled 4.25 credits, had been temporarily lost as a result of a One-Year Break-in-Service in 1994. (*Id.*) The letter further warned Plaintiff that if he did not work at least 300 hours in Covered Employment by December 31, 1998, he would permanently forfeit all of his Vesting Credits. (Am. Compl., Ex. B.) The letter also advised Plaintiff to contact the Fund if he believed he was eligible for any additional Vesting Credits. (*Id.*) Plaintiff never worked in any Covered

---

[5] "A Participant has a Permanent Break-in-Service after December 31, 1985 if: (i) He has earned 5 or fewer [Vesting] Credits and has five consecutive One-Year Breaks-in-Service including at least one after December 31, 1985 or (ii) He has earned 6 but less than 10 [Vesting] Credits and has a number of consecutive One-Year Breaks-in-Service including at least one after December 31, 1985 that equals or exceeds the number of Years of [Vesting] Credits with which he had been credited." (1993 Plan at 58.)

3

Employment again and, as a result, his 4.25 credits were permanently forfeited in 1998. (Am. Compl., Ex. C.)

Plaintiff asserts that he applied for a disability pension two additional times—in May 2011 and on or about September 7, 2016—before receiving a response. (Am Compl. at 8–9.) On September 22, 2016, the Fund informed Plaintiff via letter that his application was denied because (i) he did not have the eight Vesting Credits required at the time he ceased Covered Employment in August 1994 to qualify for disability pension benefits, and (ii) he incurred a Permanent Break-in-Service on January 1, 1999 and, as a result, lost his 4.25 Vesting Credits. (Am. Compl., Ex. C.)

## II. Procedural History

Plaintiff filed his initial complaint in this matter on September 20, 2017. (Doc. 1.) On December 4, 2017, Plaintiff filed his Amended Complaint. (Doc. 14.) On February 5, 2018, Defendant filed its motion to dismiss, including a memorandum of law in support, declaration of Luis Cordero with exhibits, and notice to pro se litigant pursuant to Local Rule 12.1. (Docs. 15–18.) On February 6, 2018, Defendant filed a letter indicating that it had inadvertently filed the wrong version of the declaration of Luis Cordero, (Doc. 20), and subsequently filed a corrected version of the declaration, (Doc. 21). On March 26, 2018, Plaintiff filed his opposition in the form of a letter, (Doc. 22), and on April 10, 2018 Defendant filed a letter indicating that it would not be filing a reply, (Doc. 23).

## III. Legal Standards

### A. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

Finally, a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### B. *Pro Se Litigants*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest."

*Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (internal quotation marks omitted). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

Liberally construing the Amended Complaint, Plaintiff appears to be asserting a claim for unpaid disability pension benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). ERISA § 502(a)(1)(B) empowers a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "A claim under this section, in essence, is the assertion of a contractual right under a benefit plan." *Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 142 (2d Cir. 1999).

Defendant argues, among other things, that Plaintiff's claim should be dismissed because it is time barred under the applicable statute of limitations. I agree.

### A. *Plaintiff's Claim is Time Barred*

#### 1. Applicable Law

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove. However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). ERISA "does not prescribe a limitations period for 29

U.S.C. § 1132 actions . . . . Therefore, the applicable limitations period is that specified in the most nearly analogous state limitations statute." *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (internal quotation marks omitted). Here, "New York's six-year limitations period for contract actions applies as it is most analogous to § 1132 actions." *Id.* (citing N.Y. C.P.L.R. § 213). "[A] cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff—regardless of whether the plaintiff has filed a formal application for benefits." *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999).

### 2. Application

Defendant contends that the Fund's lack of response to Plaintiff's first application for a disability pension in August 1995 should be deemed a denial of benefits or, alternatively, that the Fund's June 5, 1998 letter to Plaintiff advising him that he had temporarily lost his 4.25 Vesting Credits and would permanently forfeit his credits if he failed to work at least 300 hours by the end of 1998 was a sufficiently clear repudiation of Plaintiff's benefits. (Def.'s Mem. 9–10.)

Following receipt of Defendant's June 1998 letter, Plaintiff should have been aware that his claim was untenable, as he was in danger of losing all of his credits and as a result his ability to receive any benefits. The June 1998 letter informed Plaintiff that he had "temporarily lost 4.25 Vesting Credits when [he] incurred a one-year Break in Service in 1994" and "based on the amount of Vesting Credits [he] had, [he] will incur a Permanent Break in Service and permanently lose all your credit if you fail to work at least 300 hours . . . by December 31, 1998." (Am. Compl., Ex. B.) As such, the June 1998 notice presented a sufficiently clear repudiation of Plaintiff's claim for pension benefits. *See, e.g.*, *Moses v. Revlon Inc.*, No. 15-cv-4144 (RJS), 2016 WL 4371744, at *5 (S.D.N.Y. Aug. 11, 2016) (finding that discrepancy

7

between benefit amount actually received by plaintiff and amount plaintiff claimed was owed to her constituted clear repudiation sufficient to trigger statute of limitations), *aff'd*, 691 F. App'x 16 (2d Cir. 2017); *Costa v. Astoria Fed. Sav. & Loan Ass'n*, 995 F. Supp. 2d 146, 152 (E.D.N.Y. 2014) (finding that where defendant informed plaintiff that she did not qualify for benefits before she reached the age of fifty-five there was clear repudiation and plaintiff was unequivocally notified that her claim for benefits was denied). Consequently, I find that the statute of limitations began to run no later than June 1998, and expired six years later, in June 2004—approximately thirteen years before this suit was initiated.

The fact that the Fund formally denied Plaintiff's subsequent application in 2016 does not make Plaintiff's action timely. *See, e.g.*, *Costa*, 995 F. Supp. 2d at 152 ("[T]he clock began to run on the Plaintiff's ERISA claims in October of 2005 [when she was told she did not qualify for benefits] and could not be reset by the Plaintiff submitting additional requests."); *Wesley v. NMU Pension and Welfare Plan*, No. 01 Civ.2628 (WHP), 2002 WL 10486, at *5 (S.D.N.Y. Jan. 3, 2002) ("A plaintiff may not renew stale claims by requesting reconsideration of a final decision.").

Accordingly, Plaintiff's claim is time-bared and must be dismissed.

**B.**     *Amendment of Pleadings*

Complaints brought pro se typically are dismissed without prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491

8

(2d Cir. 2006). Because Plaintiff's claim is barred by the statute of limitations, and there is no suggestion in Plaintiff's papers of circumstances that would support tolling or the accrual of a claim within six years of the initiation of this action, "'better pleading will not cure' the defect, and granting leave to amend would be futile." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *Cuoco*, 222 F.3d at 112) (dismissing time-barred pro se complaint with prejudice).

Accordingly, Plaintiff's Amended Complaint is dismissed with prejudice.

V. **Conclusion**

For the foregoing reasons, Defendant's motion to dismiss, (Doc. 15), is GRANTED.

The Clerk's Office is respectfully directed to enter judgment for Defendant, mail a copy of this Opinion and Order to the pro se Plaintiff, and close the case.

SO ORDERED.

Dated: September 11, 2018
New York, New York

Vernon S. Broderick
United States District Judge